# J. G. BARRERA, ADMINISTRATOR, ET AL. V. L. A. GANNAWAY.

No. 6843.  Decided June 9, 1937.
Rehearing overruled July 28, 1937.
(105 S. W., 2d Series, 876.)

*J. G. Foster,* of Raymondville, *A. G. Haigh,* and *Brown & Bader,* of Edinburg, for plaintiff in error.

That on the death of J. R. and Olivia V. Alamia, the legal title to the land vested in their minor children, who have a right to maintain this suit notwithstanding the pending administration, either in their own name or through their guardian, and that limitation would not run against them, even though one of the minors, a girl, had married. Collins v. McCarty, 68 Texas 150, 3 S. W. 730; Galveston, H. & S. A. Ry. Co. v. Washington, 63 S. W. 538; Rindge v. Oliphint, 62 Texas 683; Hanks v. Crosby, 64 Texas 483.

*McDaniel, Fulton & Thrasher,* of McAllen, and *Montgomery, Hall & Taylor,* of Edinburg, for defendant in error.

In this State only the executor or administrator of an estate may maintain a suit to recover damages for conversion of real estate, or for injury or damage thereto, and in the absence of special circumstances giving the heirs or devisees such right, and the administrator of the estate being a plaintiff in such representative capacity and no special circumstances existing, no cause of action was shown. Youngs v. Youngs, 16 S. W. (2d) 426; Cyphers v. Birdwell, 32 S. W. (2d) 937; Richardson v. Vaughn, 23 S. W. 640; Giddings v. Steele, 28 Texas 733.

Where legal title to the cause of action was in the administrator, and he was barred by the Statute of Limitations, the heirs are also barred, even though they were under a disability at the time the cause of action accrued. Belt v. Cetti, 93 S. W. 1000; Morrell v. Hamlett, 24 S. W. (2d) 531; Wiess v. Goodhue, 98 Texas 274, 83 S. W. 178.

MR. JUDGE MARTIN delivered the opinion of the Commission of Appeals, Section B.

J. R. Alamia and wife owned 2,400 acres of land in Hidalgo County. The former died in December, 1924, and the latter in 1927. Both died intestate, leaving four minor children. A. Y. Baker qualified as administrator of the respective estates of Alamia and wife upon the death of each, and served until his death on November 1, 1930. He also qualified and acted as

guardian of the estate of said minors. J. G. Barrera succeeded Baker as such administrator and guardian, qualifying February 4, 1931. During the incumbency in office of Baker as administrator and guardian, defendant in error Gannaway entered upon the aforesaid 2,400 acres of land and removed therefrom a large amount of calichè ore and converted same to his own use. On March 18, 1932, Barrera, as administrator, guardian and next friend of said heirs, filed suit against Gannaway for the value of said caliche ore in the sum of $43,500.00. Gannaway's answer consisted of a plea in abatement, general and special exceptions, a general denial, and a special plea setting up the two year statute of limitation. To this plea of limitation plaintiffs in error, in a supplemental petition, alleged in part:

"Plaintiffs represent that Defendant, L. A. Gannaway and A. Y. Baker, * * * entered into a conspiracy to defraud said Estates and minors and Plaintiffs herein on or about the time said Gannaway began to extract and convert the caliche involved in this suit to his own use and benefit and in pursuance of said conspiracy the said Gannaway committed the trespasses, conversions, wrongs and injuries complained of * * *.

"Plaintiffs further say that the facts alleged in Plaintiffs' First Amended Original Petition and herein constitute a fraud against these plaintiffs on the part of L. A. Gannaway in the wrongful taking of said caliche by him and said fraud was not discovered by these plaintiffs, or any of them, until March 18, 1932."

They further pleaded the minority of said heirs in response to said plea of limitation.

Trial was to the court, which rendered judgment for said heirs, but denied any recovery to Barrera, as administrator and guardian.

The Court of Civil Appeals in substance held (1) that the right to sue was solely in the administrator and (2) that limitation had barred such action by the administrator.

■ We agree with the first, but disagree with the second of said holdings.

The authorities are in some confusion. Defendant in error relies upon the case of Rindge v. Oliphint, 62 Texas 682. That case is distinguishable from the present one. Here, to avoid the bar of limitation, in due order of pleading, plaintiffs in error alleged fraud and collusion, and pleaded the minority of said heirs. The trial court impliedly found with such latter plea. We are not able to agree with defendant in error that there is not a scintilla of evidence to sustain such finding.

True, there are only circumstances to support the inference of fraud and collusion, but what other kind of evidence could be expected in support of such a charge?

■ Caliche ore in place is real estate. Even Alamia in his lifetime could not have validly conveyed title to it by parol. Baker, as administrator, made no application to the probate court to sell such ore, nor do the records of such court show any report of a sale. The probate records are bare of any reference to such matters. An audit of Baker's books revealed no payment by Gannaway. It is incredible to the writer that trucks could have swarmed over his wards' land for months, hauling away thousands of tons of ore, without Baker's knowledge. The inference is we think a fair one that he knew it, and acquiesced in it. In so doing he was acting adversely to the interest of these minor heirs and of the estate. Nobody heard any fraudulent agreement made between them, but the record contains facts and circumstances entirely inconsistent with the existence of fair and open dealing and which support an inference of the opposite character. About two years went by without any effort on the part of Baker, so far as the probate or his own records show, to protect the estate, or to collect that which had been unlawfully taken from it. Baker died. Gannaway knew whether or not this was a collusive transaction. The facts pointed an accusing finger towards him. They involved in some measure moral turpitude, and called for an explanation, within his power to make. He stood silent. Neither he nor any witness for him at the trial attempted to explain the inculpatory facts proven against him. Of course, this did not supply any omissions in the testimony which it was necessary for plaintiffs in error to produce, but it did strengthen the probative force of the facts which tended to prove their charge. It has even been said that this "in itself is clothed with a certain probative force." Southern Pac. Co. v. Ulmer, 282 S. W. 305. See, generally, 17 Tex. Jur., pp. 306 and 307. We do not regard the circumstances as such as to equally support opposite inferences. We recognize that in such case, the evidence would be insufficient.

■ If our conclusion as to the sufficiency of the evidence just discussed be correct, the law is plain. In such case limitation could not run during Baker's tenure of office and while the minority of the heirs continued. Less than two years elapsed from his death until the present suit was filed.

The first and the last expression from the Supreme Court, or its Commission, which we have been able to find bearing upon the question at issue are the cases of Lacy v. Williams,

8 Texas 182, and Neblett v. Valentino, 127 Texas 279, 92 S. W. (2d) 432. The first case is squarely in point. Suit was by the heirs against a former executor and others charging the collusive conversion of the property of the estate in 1846. The executor was removed in 1847 and another representative of the estate appointed. Suit was filed in 1849. Limitation was the defense. The trial court charged in part:

" * * * all who participated in the fraud are precluded from availing themselves of the statute against the heirs until they become of age, or against the succession until there was some other person than Burton authorized to sue. If it appear that Burton connived at the acts of the other defendants and refused or failed to sue, all would be joint participants in the fraud."

Judgment for the heirs was affirmed. Between that time and 1936, there are several cases, containing some contrariety of expression upon the general rule of when an action in favor of an administrator or guardian is barred. These, however, do not touch the question upon which we rest our present decision. As indicating, however, the present view of the Court, we quote from the opinion of Judge SMEDLEY in Neblett v. Valentino, supra:

"It is settled that the powers and obligations of a guardian are similar to those of a trustee, with the distinction that the guardian does not have title to the ward's property, but has only its custody and management. Collins v. McCarty, 68 Texas 150, 153, 3 S. W. 730, 2 Am. St. Rep. 475; Shaw v. Dalston, (Tex. Civ. App.) 18 S. W. (2d) 215 (application for writ of error refused) ; Texas Utilities Co. v. West, (Tex. Civ. App.) 59 S. W. (2d) 459 (application for writ of error refused) ; 21 Tex. Jur., p. 389, Sec. 118; 28 C. J. 1128. It is because of this distinction that the rule which bars the equitable title of the cestui que trust when the legal title held by the trustee is barred has no application to suits by or for the ward. Title being in the ward and he being under disability of minority, limitation does not run against him. Article 5535, R. S. 1925; Collins v. McCarty, supra; Belt v. Cetti, 100 Texas 92, 93 S. W. 1000; Wiess v. Goodhue, 98 Texas 274, 83 S. W. 178; United States Fidelity & Guaranty Co. v. Adoue & Lobit, 104 Texas 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667; Fidelity & Deposit Company v. Risien, (Tex. Civ. App.) 284 S. W. 977, 979; Brown v. Midland National Bank, (Tex. Civ. App.) 268 S. W. 226 (application for writ of error refused)."

The following expression by Judge WILLIE in the case of Collins v. McCarty cited in the above opinion squarely supports

the judgment herein, regardless of the correctness of the view already expressed:

"In reference to this it is sufficient to say that in our own State it is held that the heir or ward under disability is not deprived of his action by any neglect on the part of the administrator or guardian to bring suit within due time."

In this case there is no question but that the full legal title to the real estate, including the caliche ore in place, was vested in the Alamia heirs, and that the administrator held no character of title thereto, and no right therein or authority over same, save what he derived from the law by virtue of his position as administrator and guardian. Since the expression of Judge WILLIE was not necessary in the disposition of the question before him, and being satisfied to rest a decision of the present question upon the ground first discussed, we think it unnecessary to here expressly approve the quoted language of the Collins-McCarty case as correct. We go no further than to say that such language finds support in the general policy of our probate law, which has safeguarded in many ways the rights of heirs to real estate by providing explicitly how same may be sold. Any rule that enables an administrator to give it away by passively acquiescing in an unlawful conversion of that of which it is a part, is precisely contradictory to the mandatory provisions of our probate law. The authority of an administrator to dispose of minerals in place and of real estate is pointedly set out in Articles 3554 and 3565, Revised Statutes, 1925. Certain it is that Baker as administrator failed to comply with these statutes. If defendant in error's theory be correct, an administrator may make what is equivalent to a gift of his ward's property by inaction and acquiescence, and this in spite of the statutes defining his powers and authority, which by implication forbid such.

■ The terms of the statute as well as a sound public policy, we think, require an administrator to bring suits like the present one, with certain exceptions, pointed out in the opinion of the Court of Civil Appeals in this case. Here the administrator and heirs joined in the suit. Judgment was for the heirs, but with the proviso that all sums collected thereunder be paid to the administrator. In effect this was equivalent to a judgment for the administrator. The difference is one of form only. The error was harmless. Every party beneficially interested was before the court and disposed of. The judgment completely protects defendant in error. This is all he was entitled to. No injury is

shown or claimed by reason of the joinder of the heirs. See Richards v. Westmoreland et al., 63 S. W. (2d) 715.

Judgment of the Court of Civil Appeals reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court June 9, 1937.

Rehearing overruled July 28, 1937.